JOHN E. BAILEY, Plaintiff-Appellant, v. LOLA F. CLARK *et al.*, Defendants-Appellees.

Fifth District    No. 5—89—0039

Opinion filed September 27, 1990.

Frank H. Walker, of Mt. Vernon, for appellant.

No brief filed for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Everett J. Clark died March 28, 1987. A document purporting to be his last will and testament was admitted to probate March 30, 1987. Harold Clark, a nephew of the decedent, filed a petition to declare the will invalid and a motion to require formal proof of the will. After a hearing the court entered an order setting aside the original order admitting the will to probate, declaring "that there has been insufficient competent evidence by the proponent of the will to establish the will." Petition for rehearing and a post-trial motion filed by John Bailey, proponent of the will, were denied. On December 29, 1987, John Bailey filed a petition contesting the de-

nial of admission of the will to probate. (Ill. Rev. Stat. 1987, ch. 110½, par. 8—2.) The petition named as parties-respondents Lola Clark, a sister and heir at law of Everett Clark, and Harold Clark, Everett Clark's nephew and administrator of the estate. A jury trial was held on the petition. On September 22, 1988, the jury returned a verdict finding that the purported will "is not the valid last will and testament of Everett Clark." This appeal ensued, following the denial of John Bailey's post-trial motion.

We note that the appellee filed no brief; however, we will decide the merits of this appeal since the issues raised in this appeal are relatively simple and can be easily addressed. (*First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495.) Because the verdict of the jury did not specify on which ground it found the purported will invalid, we will address the evidence adduced as to elements necessary to establish the execution of a valid will.

The testimony at trial revealed that Everett Clark was never married and lived with his sister Lola Clark. On March 18, 1987, Everett Clark met with attorney William Wham to discuss the preparation of his last will and testament. Everett was to return to Wham's office the following day to execute the instrument, but developed complications from a perforated ulcer and was hospitalized. He underwent surgery on March 18. Subsequent to surgery and until the time of his death, he was in intensive care and provided with an endotracheal tube attached to a ventilator to help him breathe. The placement of this tube made it impossible for him to communicate orally.

It is undisputed that on March 23, Everett Clark's cousin John Bailey, and Vera Horton, John Bailey's sister-in-law, retrieved the will prepared by William Wham and took it to attorney Frank Walker to have him finalize the execution of the will. Walker testified that he took the instrument to the hospital on March 25 to have Everett Clark execute it. Walker testified that immediately prior to executing the will he asked Everett Clark a few questions to determine whether Clark understood what he was doing.

Dr. Martin, the emergency room physician who attended Clark when he was admitted to the hospital, testified that he followed Clark's case and saw him every day while Clark was in the hospital. Dr. Martin testified that in his medical opinion, on March 25 Everett Clark was alert, competent, and capable of executing legal documents. It was revealed during cross-examination that Everett Clark passed into a coma on March 26. Dr. Martin testified, however, that

it was possible that the decedent could have been perfectly competent before noon on March 25, and could have passed into a coma on March 26.

Dorothy Smith, an attesting witness to the will, testified that she had known Everett Clark for eight years and believed him to be of "sound mind and memory and under no undue influence" when she was asked to witness the signing of the will. Immediately prior to signing the will she spoke with Everett Clark. Smith testified that "he couldn't talk verbally, but he could answer in a different way by nodding his head yes and no." She asked Clark "if he knew me and if he knew we were all there and he shook his head yes." Dorothy Smith testified that Mr. Walker then talked with Clark and said, "this is your will and testament, asked if John Bailey was his cousin. He asked if he wanted to leave everything to John Bailey; if he knew everything about this will." When asked by counsel whether Everett Clark indicated to Walker that he knew all about the will, Smith testified that he "didn't indicate that as such. He gave me the impression and I believed the man knew what was going on."

The second attesting witness, Vera Mae Horton, also testified that she had known Clark for eight years and that at the time the will was executed she believed Everett Clark to be of sound mind and memory. She answered affirmatively when asked whether she believed Clark was capable of understanding ordinary business transactions and competent to make a will at the time he signed the document.

■■ When a person executes a will he must possess sufficient mental capacity to know the natural objects of his bounty, to comprehend the character and extent of his property, to understand the particular business in which he is engaged, and to dispose of said property pursuant to a plan formed in his mind. (*Butler v. O'Brien* (1956), 8 Ill. 2d 203, 210, 133 N.E.2d 274, 278.) Lay persons may testify in a will contest concerning the issue of testamentary capacity as long as they testify to sufficient facts and circumstances indicating that their opinion is not a guess, speculation or suspicion. (*Peters v. Catt* (1958), 15 Ill. 2d 255, 260, 154 N.E.2d 280, 284; *Butler*, 8 Ill. 2d at 210, 133 N.E.2d at 278.) No witness testified that he or she believed Everett Clark was lacking in the elements of testamentary capacity on March 25, 1987. All of the witnesses who testified as to the decedent's mental state declared their belief that Clark was of sound mind and memory at the time he signed the will. We find that there was sufficient evidence from which the

jury could conclude that the decedent possessed the requisite testamentary capacity to make a will.

■■ Section 4—3 of the Probate Act of 1975 (Ill. Rev. Stat. 1987, ch. 110½, par. 4—3) provides that "Every will shall be in writing, signed by the testator or by some person in his presence and by his direction and attested in the presence of the testator by 2 or more credible witnesses." There is no question that the will was in written form. Evidence was presented, however, which raised the question of whether the will was signed as contemplated by section 4—3.

■■ The will consists of two pages. At the bottom of page one is a typed signature line with the name Everett J. Clark typed underneath. Above the signature line is a handwritten "X." Although it is not designated on the instrument that the "X" represents the testator's mark, this is not enough to invalidate the will. A will may be valid where it is signed by mark even though the mark is not accompanied by the testator's name or by the words "his mark." See *In re Will of Westerman* (1948), 401 Ill. 489, 492-93, 82 N.E.2d 474, 476.

There was testimony that Everett Clark did not mark the "X" without assistance. It was Dr. Martin's testimony that "from the first night post-operative, Mr. Clark pulled his [endotracheal] tube out, so his arms were restrained throughout the time." Attorney Walker testified that when the will was executed he placed a pencil in Everett Clark's hand because Clark's hand was tied down. Walker testified that he helped Everett Clark "find the line and we guided his hand and he made an 'X' and I held the pen in his hand." Dorothy Smith and Vera Mae Horton each confirmed Walker's assisting Everett Clark mark the "X" on the will. Dorothy Smith could not recall whether Clark was asked to make the mark himself, but recalled that he was given a pencil and helped to mark.

If a guided or assisted signature is placed on a will at the request of the person making the will and such person thereafter in the presence of two witnesses acknowledges the instrument to be his will, voluntarily made, the requirements of the statute have been met. (*In re Estate of Kehl* (1947), 397 Ill. 251, 257, 73 N.E.2d 437, 440.) There was no testimony presented that Everett Clark requested assistance in marking the "X." There was sufficient evidence presented, however, that Everett Clark's condition necessitated that he be assisted in marking the "X." The greatest dispute in the testimony is whether the testator, in the presence of the attesting witnesses, acknowledged the instrument as his will or was

aware of the contents of the document.

William Wham, the attorney who prepared the will, testified that after he prepared the instrument he never had the opportunity to read or review the will with Everett Clark.

Vera Mae Horton testified that prior to March 25, 1987, the will was never read to Everett Clark in her presence. She further testified that she did not know whether the will was read to Everett Clark on March 25. When counsel asked her whether Clark ever told her by any means on March 25, 1987, that the document was his last will and testament, she testified, "no, not me." Horton did testify, however, "When Mr. Walker asked him if this is what—if this was his will and if this is what he wanted and he shook his head, yes."

Smith, the other attesting witness, testified that just prior to Everett Clark's signing the will, she asked him if he knew that the attorney was there, and he responded by nodding affirmatively. She testified that Walker then spoke with Everett Clark and explained to him that "he was there at the last will and testament. *** He said, this is your will and testament, asked if John Bailey was his cousin *** if he wanted to leave everything to John Bailey; if he knew everything about the will." When counsel asked Smith whether Clark indicated to the attorney that he knew all about the will, Smith testified, "he didn't indicate that as such *** I believed the man knew what was going on."

The only witness who testified that the will was read to Everett Clark and that Clark was asked if he wanted to sign the will was attorney Frank Walker. Walker, who represents the proponent in this case, testified that when he asked Clark, after reading the will to him, whether that is what Clark wanted, Clark shook his head yes.

■■ ■ The testimony of the witnesses who attested the execution of the will was not wholly conclusive on the issues of whether Everett Clark acknowledged the instrument as his will or knew the contents of the instrument executed as his will. Although Clark's physical disability alone cannot be considered as evidence that he did not know the contents of the instrument which he executed (see *In re Estate of Calo* (1953), 1 Ill. 2d 376, 383, 115 N.E.2d 778, 782), based on the testimony presented in the instant case, it was entirely reasonable for the jury to find that Everett Clark did not acknowledge that the instrument was his will and did not know the contents of the instrument.

On the question of the valid execution of a will in a proceeding

for its probate, the question of the credibility of the witnesses is for the court hearing the case, and where it has given credit to the testimony of subscribing witnesses, this court will not disturb its judgment. (*In re Estate of Walsh* (1948), 400 Ill. 454, 461, 81 N.E.2d 197, 200.) The credibility of witnesses and the weight to be accorded their testimony are matters for the jury to determine, and unless its determination is manifestly against the weight of the evidence, it will not be disturbed on appeal. (*Moran v. Lala* (1989), 179 Ill. App. 3d 771, 782, 534 N.E.2d 1319, 1326.) We conclude that the record does not support the proponent's contention that the verdict was against the manifest weight of the evidence, and therefore the judgment must be affirmed.

Affirmed.

RARICK and WELCH, JJ., concur.