DAVID CHAPMAN *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. DENNIS BROKAW *et al.*, Defendants-Appellants and Cross-Appellees.

Third District   Nos. 3—91—0852, 3—91—0879 cons.

Opinion filed February 28, 1992.—Rehearing denied March 25, 1992.

Timothy L. Bertschy, of Heyl, Royster, Voelker & Allen, of Peoria (Matthew S. Hefflefinger, of counsel), for Dennis Brokaw and Bonnie Brokaw.

Gary L. Morris, of Peoria, for David Chapman and Marsha Chapman.

JUSTICE SLATER delivered the opinion of the court:

This appeal involves a contract dispute between landlords, David and Marsha Chapman (collectively Chapman or the Chapmans), and tenants, Dennis and Bonnie Brokaw (collectively Brokaw or the Brokaws), concerning an oral lease agreement and option to purchase real estate. Chapman sued Brokaw in a forcible entry and detainer action. Brokaw counterclaimed. After a jury trial, Chapman was awarded possession of the real estate. The jury awarded Brokaw a total of $10,000 in damages for breach of the covenant of quiet enjoyment and for breach of the option. The trial judge, sitting in equity, denied Brokaw's request for specific performance of the option contract but entered judgment on the verdicts. Both Chapman and Brokaw appeal. We affirm in part, reverse in part, and remand.

On September 28, 1988, Dennis Brokaw met with David and Marsha Chapman to discuss the terms of a lease whereby Brokaw would rent a house from the Chapmans for one year at a monthly rental of $610. Their agreement included an option to purchase the house at anytime until September 1, 1989, for the sum of $66,000. Brokaw gave the Chapmans $1,410, which represented rent for the first and last months plus a security deposit of $190. A formal lease was to be drawn up and signed within 30 days, but was never done. At the September 28 meeting, Marsha Chapman wrote out a receipt for the tendered $1,410. The receipt provided as follows:

"Sept 28, 88

Received of Dennis Brokaw fourteen-hundred & ten dollars.

1st month rent & last month & $180 [sic] security deposit.

1 yr lease to be signed within 30 days.

/s/ Marsha A. Chapman.

Purchase price of $66,000 is good thru August of 1989.''

The Brokaws moved into the house in October of 1988. On June 20, 1989, the Brokaws attempted to exercise the option to purchase by sending to the Chapmans a document signed by the Brokaws entitled "Contract to Purchase Real Estate" along with a $1,000 earnest money check. On June 22, 1989, Chapman returned the check and served Brokaw with a notice to quit the premises by August 1, 1989. The Brokaws remained in the house and paid rent for July.

During July, the parties renegotiated for the sale of the house, and a closing date was set for August 28, 1989. The Brokaws failed to appear at the scheduled closing. In September of 1989, the Brokaws tendered $3,000 to the Chapmans as earnest money to purchase the house. On October 3, 1989, the Chapmans filed a forcible entry and detainer action seeking possession and $610 in back rent for August, but did not immediately serve the Brokaws with notice of the action. On October 17, Brokaw tendered another $4,000 to Chapman. Thereafter Brokaw was served with summons in the forcible entry and detainer action. Brokaw denied Chapman's right to possession and filed a counterclaim for (1) a declaratory judgment that the June 22 notice to quit was invalid, (2) damages for breach of the covenant of quiet enjoyment, and (3) specific performance of the option agreement.

Brokaw has not paid rent since August of 1989 except for $610 which was paid in 1991. During the course of litigation, the Chapmans twice amended their complaint to request additional back rent. At trial, the court refused to allow Chapman to introduce evidence that Brokaw was assisted by an ex-attorney in preparation for litigation and in negotiations for the purchase of the property. The trial judge also excluded evidence of prior unrelated eviction and forfeiture proceedings brought against Brokaw. After Chapman had rested, the court granted the Brokaws leave to amend their counterclaim to seek damages for breach of the option agreement.

Two special interrogatories were submitted to the jury. In response, the jury found: (1) that the parties had entered into a one-year lease in September of 1988; and (2) that the Chapmans had breached the covenant of quiet enjoyment. The jury awarded possession of the property to Chapman. The jury awarded Brokaw $1,000 in damages for breach of the covenant of quiet enjoyment and $9,000 for breach of the option contract. The trial judge, exercising his chancery powers, denied Brokaw's request for specific performance.

We first address the issue of whether the jury's finding that the parties had a valid one-year lease was against the manifest weight of the evidence. The Brokaws contend that on September 28, 1988, the parties entered into a one-year lease agreement with an option to buy.

The Chapmans argue that because no formal lease was signed by the parties, Brokaw had only a month-to-month tenancy terminable upon 30 days' notice.

In Illinois, four elements are required to create a valid lease: (1) a definite agreement as to the extent and bounds of the property leased; (2) a definite and agreed term; (3) a definite agreement as to the rental; and (4) the time and manner of payment. (*Ricke v. Ricke* (1980), 83 Ill. App. 3d 1115, 405 N.E.2d 351.) Initially, we note that Chapman has not alleged that the September 28, 1988, agreement is unenforceable under the Frauds Act (Statute of Frauds) (Ill. Rev. Stat. 1989, ch. 59, par. 2). The Statute of Frauds is an affirmative defense and must be raised by the party relying on it. (*Haas v. Cravatta* (1979), 71 Ill. App. 3d 325, 389 N.E.2d 226.) The statute does not act *sua sponte* to invalidate oral contracts (*Ullsperger v. Meyer* (1905), 217 Ill. 262, 75 N.E. 482), and when it is not properly invoked by the pleadings as a defense, a verbal contract falling within the scope of the statute may be enforced. *Shugan v. Colonial View Manor* (1982), 107 Ill. App. 3d 458.

Chapman claims that the September 28 agreement contained a condition precedent which was never met. Chapman points to the provision in the receipt which states "one year lease to be signed within 30 days." At trial, David and Marsha Chapman testified that they did not intend to sign a lease and be bound until they received credit references from the Brokaws. Dennis Brokaw denied that credit references were requested.

The fact that the parties may contemplate a more formal agreement will be executed in the future does not necessarily render prior agreements mere negotiations where it is clear that the ultimate contract will be based on terms substantially similar to those in the previous agreement. (*Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 407 N.E.2d 615.) The question is whether the parties intended the prior agreement to be binding or whether they considered a formal writing to be a condition precedent to the vesting of rights and duties. (*Interway*, 85 Ill. App. 3d at 1099, 407 N.E.2d at 619.) If the parties intended the September 28 agreement to "be contractually binding, that intention would not be defeated by the mere recitation in the writing that a more formal agreement was yet to be drawn." *Interway*, 85 Ill. App. 3d at 1098, 407 N.E.2d at 618.

The phrase "one year lease to be signed within 30 days" does not evidence a clear intention that a formal lease was to be a condition precedent. Where the language of a writing is ambiguous and the parties disagree about the facts surrounding their negotiations, the

determination of the writing's meaning and the intention of the parties is a question of fact. (*Interway*, 85 Ill. App. 3d at 1098, 407 N.E.2d at 619.) In this case, the jury determined that the parties had a valid one-year lease. Whether credit references had been requested and whether the parties intended to be bound as of September 28 were questions of fact which hinged on the credibility of the witnesses. We find that the jury's determination that the parties had a one-year lease was not against the manifest weight of the evidence.

■ The jury also determined that Chapman breached the oral option agreement which was part of the lease. Both parties testified that at the September 28 meeting they agreed that Brokaw would have the option to purchase the leased property at anytime prior to September 1, 1989, for $66,000. Again, Chapman has not raised the argument that the option agreement is unenforceable under the Statute of Frauds. Chapman contends that the option agreement was not binding because Brokaw gave no consideration in exchange for Chapman's promise to keep the offer open. We disagree. It is well settled that a promise to pay rent is "sufficient consideration to support [an] option as well as the right of occupancy under the lease, and to bind the lessor, irrespective of the lessee's lack of obligation to purchase." *Cities Service Oil Co. v. Viering* (1949), 404 Ill. 538, 552. See also *Cole v. Ignatius* (1983), 114 Ill. App. 3d 66, 448 N.E.2d 538.

However, while the parties may have had an enforceable option agreement, we do find the jury's determination that Chapman breached the option agreement to be against the manifest weight of the evidence. The only terms of the option which were agreed upon by the parties were that Brokaw had until September 1, 1989, to purchase the property for $66,000. An option must be exercised in strict accordance with its terms. (*Department of Public Works & Buildings v. Halls* (1966), 35 Ill. 2d 283, 220 N.E.2d 167.) The only way for Brokaw to exercise the option, according to its terms, was to tender the sum of $66,000 to Chapman prior to September 1, 1989.

On June 20, 1989, Brokaw attempted to exercise the option by sending to Chapman a signed document entitled "Contract to Purchase Real Estate" along with a $1,000 earnest money check. This proposed contract required Chapman to accept a six-month promissory note for $5,000 and give credit against the purchase price for rent paid. It was further subject to Brokaw's being able to secure financing in the amount of $49,300. The proposed contract clearly added new conditions to the option and therefore did not constitute a valid acceptance of the option. (*Department of Public Works & Buildings v. Halls* (1966), 35 Ill. 2d 283, 220 N.E.2d 167.) Brokaw never

effectively exercised the option. Accordingly, the $9,000 judgment against Chapman for breach of the option is reversed.

Brokaw contends that the trial judge erred in refusing to grant specific performance of the contract to purchase the real estate arising out of the option agreement. An option contract does not become an enforceable contract for sale until the option is effectively exercised in accordance with its terms. (*Moehling v. Pierce* (1954), 3 Ill. 2d 418, 121 N.E.2d 735.) Because Brokaw never effectively exercised the option in this case, a contract for the sale of the property was never formed. Therefore, there was no contract to specifically enforce. We affirm the judgment of the trial court denying specific performance.

■ The Chapmans contend that the jury's finding that they breached the covenant of quiet enjoyment was also against the manifest weight of the evidence. The covenant of quiet enjoyment is implied in all lease agreements. (*Blue Cross Association v. 666 North Lake Shore Drive Associates* (1981), 100 Ill. App. 3d 647, 427 N.E.2d 270). The Brokaws allege that the Chapmans breached the covenant of quiet enjoyment when the Chapmans pounded on their door, harassed them by phone, circled the property in their car, and wrongfully served them with a notice to quit the premises. Chapman denied these allegations. After hearing extensive testimony and weighing the credibility of the witnesses, the jury found that Brokaw was entitled to $1,000 for breach of the covenant of quiet enjoyment. The jury was in the best position to make a determination on this issue, and this court will not disturb its findings. (*Bailey v. Clark* (1990), 203 Ill. App. 3d 1017, 561 N.E.2d 367.) We affirm the judgment of $1,000 against the Chapmans for breach of the covenant of quiet enjoyment.

■ Chapman next contends that the trial court erred in excluding evidence that Brokaw was assisted by an ex-attorney while proceeding *pro se* and that Brokaw had been involved in prior unrelated court actions for foreclosure and eviction. Determination of the relevancy of evidence is largely within the discretion of the trial court and reversal of its decision is not warranted absent an abuse of that discretion. (*Carlyle v. Jaskiewicz* (1984), 124 Ill. App. 3d 487, 464 N.E.2d 751.) We agree with the trial court that the proffered evidence was irrelevant in the instant case. We specifically find that there was no abuse of discretion by the trial court in this regard and that the evidence was properly excluded.

■ Finally, the Chapmans contend that the jury's refusal to award them back rent which accrued during the course of litigation was against the manifest weight of the evidence. We agree. The Brokaws argued, and the jury apparently found, that when the

Brokaws attempted to exercise the option, their status as tenants terminated, and that they became vendees and were therefore no longer obligated to pay rent. (See *Welsh v. Jakstas* (1948), 401 Ill. 288, 82 N.E.2d 53.) However, as discussed *supra*, the Brokaws did not effectively exercise the option to purchase. Therefore, they never became vendees, but rather they remained tenants at all times. We reverse this portion of the judgment and remand for a determination of the appropriate amount of rent due to Chapman. In this regard, on remand, consideration should be given to the $7,000 the Chapmans received from the Brokaws during September and October of 1989.

In summary, we affirm the judgment of the trial judge as it relates to the denial of the request for specific performance. We affirm the judgment for possession of the real estate to the Chapmans. We affirm the judgment of $1,000 against the Chapmans for breach of the covenant of quiet enjoyment. We reverse the judgment of $9,000 for breach of the option agreement. The judgment in favor of Brokaw on the issue of rent is reversed and remanded.

Affirmed in part; reversed in part and remanded.

GORMAN and HAASE, JJ., concur.